FRANCES HOWIE, Administratrix of the Estate of WOODROW HOWIE, Deceased, Appellant, v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a Corporation, Respondent, No. 41647—230 S. W. (2d) 703.

Division Two, June 13; 1950.

*Cox & Cox, Schuwerk & Schuwerk* and *Conn & Clendenin* for appellant.

772.

*John W. Murphy, Roscoe Anderson* and *Cullen Coil* for respondent.

WESTHUES, C.—Appellant, plaintiff below, obtained a verdict against the respondent railway company in the sum of $15,000 as damages due to the alleged wrongful death of her husband who lost his life in a collision of a truck he was driving and a freight train operated by the defendant. The collision occurred in the State of Illinois and the laws of that state must be applied. Plaintiff's petition was in two counts. In the first count she charged common law negligence and in the second, willful and wanton negligence. The case was submitted to a jury on both counts. A verdict was returned for plaintiff. The defendant filed a motion for new trial alleging that the case should not have been submitted to a jury on the first count because the deceased was guilty of contributory negligence as a matter of law; that under the evidence the defendant was not guilty of willful and wanton negligence and, therefore, the court should have directed a verdict for the defendant. The trial court granted a new trial assigning as a reason therefor that the deceased was guilty of contributory negligence as a matter of law. The trial court refused to grant the defendant's motion for a directed verdict for the reason that the court deemed the evidence sufficient to sustain the charge of willful and wanton negligence. From the order granting a new trial plaintiff appealed. The questions presented by the briefs are whether deceased was guilty of contributory negligence as a matter of law and whether the evidence justified a submission of the case on willful and wanton negligence.

The facts may be briefly stated as follows: The collision in question occurred on November 19, 1947, a short distance south of Chester, Illinois. At this point the tracks over which defendant operated the train involved in the collision ran north and south. To the west of the tracks and along the Mississippi River was a sand plant where road building material such as sand, gravel, and cement was assembled. For some time prior to November 19 many trucks had been engaged in hauling material from the plant to the public highway east of the tracks. It was necessary for the trucks to cross the railroad tracks

at grade when leaving the plant with a load of material. The deceased, Woodrow Howie, owned and operated one of the trucks. At ten o'clock on the morning of the collision Howie left the plant with a load of material and drove toward the crossing. At this same time one of defendant's freight trains, composed of 90 cars (60 loaded and 30 empty), was traveling north. This train struck Howie's truck at the crossing and Howie's death resulted. The roadway over which Howie drove his truck toward the crossing ran in a northeasterly direction to within about 30 or 40 feet of the crossing; from that point to the crossing there was an upgrade road which ran due east and at right angles to the tracks. The evidence with reference to the distance from which trains approaching the crossing could be seen from the roadway varied. However, the physical conditions as reflected by the photographic exhibits, as well as practically all the evidence, indicate that for a distance of 30 feet or so west of the tracks trains could be seen from either direction for a distance of more than 400 feet. At any point within 25 feet west of the tracks a train could be seen coming from the south for a distance of 1200 feet or more and for a longer distance from the north.

Plaintiff's evidence was that Howie drove toward and onto the tracks at a speed of 2 or 3 miles per hour and at no time changed the rate of speed before the collision; that the truck could have been stopped almost instantly or at least within one foot by taking the foot off the accelerator; that the speed of the train was about 50 mile per hour; that no warning signal was given from the oncoming train until a second or so before the collision when a short blast of the whistle was given. One of plaintiff's witnesses testified that he saw smoke from the train's engine when it was a long distance away and heard the noise of the train; that he saw Howie in the truck going toward the crossing and saw the collision.

 We are of the opinion that the trial court was correct in its ruling that Howie was guilty of contributory negligence as a matter of law. In this case plaintiff's own evidence accounted for deceased's conduct immediately prior to the collision. Driving over a railroad crossing at 2 or 3 miles per hour in the path of an oncomng train which is in full view of the driver constitutes negligence. Swenson v. Chicago, M., St. P., & P. R. Co., 336 Ill. App. 287, 83 N. E. (2d) 375, l. c. 378 (2); Carrell v. New York Central R. Co., 384 Ill. 599, 52 N. E. (2d) 201, l. c. 204 (3-7); Fitch v. Thomson, 322 Ill. App. 703, 54 N. E. (2d) 623, Syl. 11; Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2d) 185.

Appellant cited the following cases in support of her contention that the question of contributory negligence was properly submitted to the jury: Applegate v. Chicago & N. W. Ry. Co., 334 Ill. App. 141, 78 N. E. (2d) 793; Randolph v. New York Central R. Co., 334 Ill. App. 268, 79 N. E. (2d) 301, l. c. 304 (2-4); Emge v. Illinois Central R.

Co., 297 Ill. App. 344, 17 N. E. (2d) 612; Dukeman v. C., C., C. & St. L. R.R. Co., 237 Ill. 104.

The facts in each of the above cases were such that the question of contributory negligence was one of fact for a jury. Note in the Applegate case the warning signal lights stopped flashing after a freight train had passed. Deceased attempting to cross over the tracks was struck by a passenger train traveling in the opposite direction from the freight train.

In the Randolph case there were no eyewitnesses to the accident. The court held evidence that deceased was a sober, strong, healthy, industrious and thrifty man constituted circumstantial evidence of due care and hence the issue of contributory negligence was for a jury.

In the Emge case weeds obscured the view of oncoming trains. The injured party stopped within 8 or 10 feet of the crossing, listened, and then proceeded across the tracks. No crossing signal was given.

In the Dukeman case the deceased was riding in a buggy with her husband. The collision occurred at a city street crossing. There was evidence that the train was traveling at a speed in excess of that permitted by the city ordinances. The only eyewitness was not in a position to observe and to give a correct account of how the accident occurred.

It will be noted that all of these cases are distinguishable from the case now before us. Here we have evidence from many eyewitnesses. All agreed that deceased approached the track at a speed of 2 or 3 miles per hour; that he could have stopped his truck almost instantly; that he had a clear view of the oncoming train as he approached the crossing. We must rule that he was guilty of negligence, and, therefore, the trial court was right in holding the case should not have been submitted to a jury on the first count.

Did the evidence justify a submission of the case on the theory that the operators of the train were guilty of willful and wanton negligence? We think not. Willful and wanton negligence means something more than ordinary negligence. It includes the element of reckless disregard of consequences as affecting the life of another. 45 C. J. 676, Sec. 43. The meaning of willful and wanton negligence has been considered by the courts of various states on numerous occasions. See Tighe v. Diamond, 149 Ohio State 520, 80 N. E. (2d) 122; Allen v. Robinson, 193 P. (2d) (Cal.) 498, l. c. 500 (1) (2); Rich v. Petersen Truck Lines, 357 Pa. 318, 53 A. (2d) 725, l. c. 728 (6-8); Scaia's Case, 69 N. E. (2d) (Mass.) 567, l. c. 568 (1,2); Baltimore & Ohio R. Co. v. Felgenhauer, 168 F. (2d) 12, l. c. 16 (4,5); Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N. E. (2d) 293; Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N. E. 242; Robertson v. New York Central R. Co., 388 Ill. 580, 58 N. E. (2d) 527; Provenzano v. Illinois Central R. Co., 357 Ill. 192, 191 N. E. 287. The facts in the

Provenzano case were similar to those in the present case with the exception that the driver of the truck in the former case was not killed in the collision. On the question of willful and wanton negligence, the court there said, 191 N. E. 288 (1-4):

> "In order to constitute willful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others. * * * However, even if it be taken as true that no bell was rung or whistle sounded, it would be nothing more than an act of negligence. The same is true as to the speed at which the train was running, even if it be assumed at the highest estimate of 60 miles per hour. The public interest requires, and the law permits, that passenger trains may be operated at such speed as may be consistent with a due regard for the safety of the passengers and those persons who are, in the exercise of due care for their own safety, traveling on the highways over and across the railroad tracks."

The above ruling was approved in the Robertson case, supra. See 58 N. E. (2d) 529 (1-6).

There is no evidence in this record of any fact which would have led the operators of the train to believe Howie did not intend to stop before driving upon the tracks. They, therefore, had the right to assume that the deceased would stop his truck. Plaintiff's witnesses testified that they heard a short blast of the whistle a second or so before the impact. The brakes were applied in emergency. In such a situation defendant's agents were not guilty of willful and wanton negligence.

Appellant cited a number of cases in support of her contention that the evidence justified a finding of willful and wanton negligence. Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N. E. 242, lends some support to appellant's position. In that case the defendant operated a short-line railroad serving various industries. Brown, wth a truckload of material, was struck by a train of defendant. Brown was driving west over a road parallel with the tracks. The train was also traveling west. The evidence was that since the public road to the north was closed, the trainmen knew Brown was going to turn south and cross the tracks which were about 25 feet south of the road. The evidence was that the engineer saw Brown look back over his shoulder when he made the turn south and keep on driving toward the crossing. The trainmen did nothing until it was too late to avoid a collision. A jury could find from these facts that the engineer should have known that Brown did not intend to stop when he did not slacken speed of the truck after turning south and looking back over his shoulder. No such facts appear in the record of the present case. We are bound to follow the Illinois cases, and we deem the cases of Provenzano and Robertson, supra, controlling. The Illinois cases

all hold that to constitute willful and wanton negligence the injury must either have been intentionally inflicted or produced by acts of willful negligence showing a reckless disregard for others' safety. There is no evidence in this record to justify such a finding. Robertson v. New York Central R. Co., supra, 58 N. E., l. c. 529 (1-6). We, therefore, rule that the defendant's motion for a directed verdict should have been given.

The case should, therefore, be remanded to the trial court with directions to set aside its order granting a new trial and to enter a judgment for the defendant. It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.